**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0079-19T3

MANUEL SANCHEZ and
YOLANDA SANCHEZ,
his wife,

     Plaintiffs-Appellants,

v.

PORFIRIO I. RAMON,
MARIA E. RAMON, and
NEW JERSEY TURNPIKE
AUTHORITY,

     Defendants,

and

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

     Defendant-Respondent.

_____

     Argued telephonically September 14, 2020 –
     Decided October 6, 2020

     Before Judges Messano and Hoffman.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-8597-12.

Thomas De Seno argued the cause for appellants.

John A. Camassa argued the cause for respondent (Camassa Law Firm, PC, attorneys; John A. Camassa, of counsel; Christopher M. Brady, on the brief).

PER CURIAM

This dispute concerning underinsured motorist (UIM) coverage returns to us after our remand. See Sanchez v. N.J. Tpk. Auth., No. A-1969-15 (November 16, 2017) (Sanchez I). We assume the reader's familiarity with our prior decision, where we vacated the order granting summary judgment in favor of New Jersey Manufacturers Insurance Company (NJM) and remanded the matter for a plenary hearing to decide material factual disputes. Id. (slip op. at 10).

Following a period of additional discovery, Judge Phillip Paley conducted a plenary hearing, where he received the testimony of four witnesses connected to the New Jersey Turnpike Authority (the Authority) – two employees and two insurance representatives. After assessing the testimony of these witnesses and reviewing the trial record, the judge issued a comprehensive written opinion resolving the material factual disputes. Based on these rulings, the judge again concluded that plaintiffs "are not entitled to UIM benefits from NJM for the

A-0079-19T3

2011 collision." This appeal followed. Following our review of the record and the parties' briefs, in light of the applicable principles of law, we affirm.

A trial court's findings of fact are binding on appeal if supported by "adequate, substantial, and credible evidence." Rova Farms Resort, Inc. v. In'vrs Ins. Co. of Am., 65 N.J. 474, 484 (1974). Such findings made by a judge in a bench trial "should not be disturbed unless they are so wholly insupportable as to result in a denial of justice." Id. at 483-84. Factual findings that "are substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case" enjoy deference on appeal. State v. Johnson, 42 N.J. 146, 161 (1964).

To recap, there was no dispute that plaintiffs' NJM policy provided $300,000 in UIM coverage. Nor was there any dispute that, "pursuant to the language of the NJM policy, NJM's coverage was excess to that provided by the Authority." Sanchez I, (slip op. at 7). The critical dispute concerned whether the Authority provided $15,000 or $2 million in UIM coverage at the time of the subject accident. At the plenary hearing, plaintiffs conceded they had the burden of proof on remand.

A-0079-19T3

Although self-insured, starting in 2003, the Authority procured an excess policy from Chartis Claims, Inc. (Chartis) for claims over $2 million. We previously noted,

> Endorsement No. 23 of that policy, which was titled "Uninsured/Underinsured Motorists Coverage Endorsement," could be construed to mean that Chartis was providing UIM coverage for occupants of the Authority's vehicles on an excess basis, and that the Authority was self-insured for $2 million in UIM coverage. The endorsement included the following sentence: "Uninsured/Underinsured Motorists Retained Limit $2,000,000 INSURING AGREEMENT." The Authority's position was that the Chartis policy only covered third-party claims, not UIM claims. The Authority contended that Endorsement No. 23, including the retained limit language concerning UIM coverage, was insurance company boilerplate, which was not applicable to the type of coverage the Authority had purchased from Chartis and should not have been included in the policy.
>
> [Sanchez I, (slip op. at 3-4).]

On February 15, 2012, an internal memo of the Authority acknowledged the confusion over its own UM/UIM limits and that its self-insured retention (SIR) limits were never formalized. The memo recommended the Authority explicitly establish SIR limits of $250,000/$500,000 for UM/UIM coverage and delete the UM/UIM endorsement in the Chartis umbrella policy. On February 28, 2012, Authority commissioners authorized the Executive Director to amend

4

A-0079-19T3

the Authority's excess policy to "clarify" the UM/UIM limit within the Authority's SIR and remove the UM/UIM endorsement in the Chartis umbrella policy. Notwithstanding this authorization, the Authority once again approved the renewal of the Chartis umbrella policy, containing the UM/UIM endorsement, for the 2013-2014 policy period.[1]

At the plenary hearing, plaintiffs failed to identify any cases where the Authority settled for its asserted UM/UIM limits of $15,000/30,000. In contrast, NJM identified four cases (including the matter under review) where the Authority acted in conformity with the language contained in the Chartis excess policy, by providing UM/UIM benefits in excess of its purported $15,000 self-insured limits.

In DiCandia v. NJTA, the Authority paid $280,000 in settlement of the plaintiff's UM claim arising from a 2004 auto accident, notwithstanding the Authority's position that it provided UM/UIM limits of only $15,000. The Authority approved this settlement on October 22, 2013.

---

[1] Later, at the Authority's request, a retroactive Deletion Endorsement was added to the February 1, 2013 to February 1, 2014 Chartis excess policy period. The Deletion Endorsement was added in October of 2014 to retroactively delete the UM/UIM endorsement, effective February 1, 2013.

In Powell v. NJTA, the Authority approved payment of "the limit of its self-insured retention, $2 million, and the Authority's excess carrier, Chartis, would contribute a total of $1 million" in settlement of the plaintiff's UIM claim arising from a 2008 auto accident, notwithstanding the Authority's position that it provided UM/UIM limits of only $15,000. The Authority approved this settlement on November 28, 2012.

In the matter under review, the Authority again paid an amount well in excess of its claimed $15,000 UM/UIM limits. Consistent with its prior practices, the Authority paid $67,000 in settlement of plaintiffs' UIM claim, notwithstanding the Authority's position that it provided UIM limits of only $15,000. The Authority approved this settlement on August 25, 2015.

In Renna v. NJTA, the Authority approved payment of $400,000 to settle the plaintiff's UIM claim. Of note, the accident occurred in 2013, after the Authority decided to "clarify" its UM/UIM SIR limits of $250,000/$500,000 and during the policy period when the Authority sought to retroactively delete the UM/UIM endorsement in the Chartis umbrella policy. The underinsured motorist in Renna had liability limits of $100,000. Accordingly, the Authority's maximum exposure on the plaintiff's UIM claim, based on the Authority's asserted limits, was $150,000. Consistent with its past practices, however, the

6

Authority paid $400,000. The Authority approved the settlement on November 21, 2017, five days after we decided Sanchez I.

Two Authority representatives testified that they believed the Authority provided $15,000/$30,000 in UM/UIM benefits at the time of the subject accident; however, the Authority failed to produce any pre-accident documents confirming this position. The only supporting documentation was generated after the subject accident, purporting to "retroactively" confirm the Authority's position of $15,000/$30,000 in UM/UIM coverage. Therefore, the testimony provided by the Authority representatives was properly subject to Judge Paley's credibility determinations.

Judge Paley determined that plaintiffs' primary witness, John O'Hern, the Authority's former chief operating officer (COO), was not credible in his explanation of the Authority's past settlements; in addition, the judge described Mr. O'Hern's "experience with, and knowledge of, insurance" as "limited." Marianne Zach, an attorney with the Authority's law department, also testified. Judge Paley found credible Ms. Zach's testimony about the procurement of the Chartis policy; however, he did not credit her testimony that the risk of litigation explained the multiple settlements in excess of the Authority's purported coverage.

A-0079-19T3

Edward Papierowicz, an assistant vice president with Authority's insurance broker, testified that he placed the Chartis policy for the Authority from 2003 through 2011. During that period, each year, the Chartis policy had a $2 million attachment point and included the UM/UIM endorsement. He testified regarding the Underwriting Data Form completed by the Authority in connection with the application for the Chartis excess policy. Under "Automobile Liability incl. UM/UIM," the Authority listed its underlying coverage as: "$2 MILLION EACH OCCURRENCE, SELF-INSURED." The judge found the testimony of Mr. Papierowicz credible.

Vivian Cardamone, an underwriter and assistant vice president with Chartis, had fifteen years of experience working on the Authority's excess policy. She recounted that Mr. Papierowicz requested the UM/UIM excess umbrella policy. Ms. Cardamone testified that Mr. Papierowicz never raised any concerns regarding the initial policy or any renewal, nor did she believe that Endorsement No. 23 contained a mistake. The judge described the testimony of Ms. Cardamone as "highly credible."

Based on the witness testimony presented, Judge Paley made credibility determinations supported by the record. He noted that the only evidence presented on remand was that the Authority settled UM/UIM claims in

8

conformance with SIR UM/UIM limits of $2,000,000. Judge Paley found plaintiff's primary witness, the Authority's former COO, was not credible in explaining previous settlements, finding no credible basis for his contention that the Authority's limits were $15,000. Judge Paley further found that the Authority never established a "policy" as to its UIM limits, and certainly none was documented on remand.

As to the Authority's review of its policies, the judge found Mr. O'Hern's credibility diminished because the Authority maintained the Chartis policy since 2003 and settled cases well in excess of its claimed $15,000/$30,000 UM/UIM limits during that time.

> The [Authority's] claimed UM/UIM limits of [$15,000/$30,000] were never approved by its Board. The cited settlements reflect the [Authority's] acknowledgement that the available UM/UIM limit was the retained limit set forth in the Chartis endorsement, even after 2012, when the [Authority] 'formally' set the limit at $250,000. The [Authority] has never established a 'policy' . . . limiting UM/UIM benefits to [$15,000/$30,000]. The inexorable conclusion is that the [Authority's] self-insured UM/UIM limit in effect in 2011 was $2 million.

The judge went on to point out the Authority repeatedly renewed the Chartis policy, despite its own extensive experience in insuring vehicles, and "failed to examine the Chartis policy (or, at least, its clear declaration page) in detail."

A-0079-19T3

As for the Authority's position that its excess settlements were to avoid "risks," the judge found "[i]n at least two cases the risks were non-existent." In plaintiff's case, applying the Authority's $15,000/$30,000 limit, "plaintiff was not underinsured according to N.J.S.A. 17:28-1.1(e)(1)"; nevertheless, "without challenging the issue, the [Authority's] Board approved a $67,000 settlement." Moreover, in one of the cited settlements, the judge found the Authority approved paying $2 million, the full amount of the disputed UM/UIM SIR under the Chartis policy.

The judge found no basis to reform any contract, noting that if there was a mistake on the Authority's part, it was unilateral; therefore, reformation was not justified. Furthermore, the judge observed the Authority's "history of settlements suggests that it understood that its UIM limit was reflected in the Chartis policy. There is no evidence of mistake, mutual . . . or unilateral."

For those reasons, the judge held NJM's insurance was excess to the Authority's UM/UIM limits, which he found was $2 million on the date of the subject accident. Therefore, he entered the order under review, providing that "plaintiffs shall receive no UIM benefits . . . from [NJM]" and dismissed plaintiffs' complaint with prejudice and without costs.

A-0079-19T3

On appeal, plaintiffs contend Judge Paley ignored the testimony of the Authority's COO and staff attorney, who both testified the Authority had a $15,000/$30,000 UM/UIM SIR at the time of plaintiffs' accident and that it did not include a $2 million UM/UIM SIR in its application for excess insurance. This argument lacks merit. The judge did not ignore this testimony; to the contrary, he directly addressed the testimony and fully explained his reasons for not finding the testimony credible.

The record supports the judge's determination that the Authority's witnesses were not credible regarding its UM/UIM SIR at the time of plaintiff's accident. The Authority's other UIM settlements, along with its procurement and consistent renewal of the Chartis umbrella policy listing $2 million as its SIR for UM/UIM claims, all cast doubt on the testimony asserting the Authority's UIM SIR was $15,000/$30,000.

The record is devoid of any credible evidence that the Authority maintained a SIR of $15,000/$30,000 for UM/UIM coverage at the time of the subject accident. In contrast, the testimony of the Authority's insurance broker and the Chartis vice president provided strong support for the judge's determination that the Authority maintained an SIR of $2 million for UM/UIM, at all relevant times. Because the judge's factual findings and credibility

determinations are supported by the record, we are satisfied he reached the correct result.

Plaintiffs' remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-2(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0079-19T3